**Lillie M. FERRELL, Plaintiff–Appellant,**

v.

**LEAKE & WATTS SERVICES, INC., Defendant–Appellee.**

No. 03–7072.

United States Court of Appeals, Second Circuit.

Nov. 20, 2003.

Stephen Bergstein (Christopher D. Watkins, on the brief), Thornton, Bergstein & Ullrich, LLP, Chester, NY, for Appellant.

E. Johan Lubbe, Jackson Lewis LLP, White Plains, NY, for Appellee.

Present: MCLAUGHLIN, KATZMANN, Circuit Judges, and

SCHEINDLIN,\* District Judge.

## SUMMARY ORDER

ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the district court be and it hereby is REVERSED and the case is REMANDED for trial.

Plaintiff-appellant Lillie M. Ferrell appeals the district court's grant of summary judgment in favor of Defendant-appellee Leake & Watts Services, Inc., on her claim of age discrimination under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq.

On appeal, "[w]e review a district court's grant of summary judgment de novo, construing the evidence in the light most favorable to the nonmoving party." Mack v. Otis Elevator Co., 326 F.3d 116, 119 (2d Cir.2003). Summary judgment should be granted by the district court only if its examination of the record demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Furthermore, as we have repeatedly held, district courts should employ summary judgment sparingly in discrimination cases. See Holtz v. Rockefeller & Co., 258 F.3d 62, 69 (2d Cir.2001) (stating that summary judgment in discrimination cases calls for an "extra measure of caution").

■ Plaintiff Lillie Ferrell, now sixty-one years old, was employed as a special education teacher at the Biondi Education Center ("Biondi") and its predecessor, the Hudson View School, both operated by defendant Leake & Watts Services, Inc. Ferrell had worked at the school as an at-will employee for thirty years, and was the oldest teacher when she was fired in June, 1998. Ferrell alleges that she was terminated because of her age.

During the thirty years of her employment, and prior to the events immediately preceding her dismissal, Ferrell had received almost exclusively positive performance evaluations. Furthermore, Ferrell's sole negative review—for the 1995–96 school year—derived from her shortcomings not as a teacher but instead as a "cluster leader," a position involving additional responsibilities that she held for only one year.

In February of 1998, however, a new principal, Michael McCullough, assumed responsibility over Biondi. Soon after taking charge, McCullough directed school staff to submit essays on "Why I Stay and Work at Leake & Watts?" and interviewed each teacher. Ferrell's essay was handwritten and contained spelling errors, and McCullough deemed both it and her interview "poor." As a result of the teachers' essays and interviews, the new principal placed three individuals, including Ferrell, on probation for a one-month period. The other two teachers were in their forties.

While on probation, Ferrell was observed by supervisor Kathy Crowley–Lavas—whom Plaintiff claims was unable to perform evaluative teacher observations because she was not a licensed administrator under New York law—and vice-principal Janice Wolkenberg. During the course of her probationary period, Plaintiff claims to have overheard Wolkenberg tell a student that Ferrell was "too old to be in the classroom." The vice-principal signed off on all seven negative observation reports that were written in connection with

\* The Honorable Shira A. Scheindlin, of the United States District Court for the Southern District of New York, sitting by designation.

Ferrell's probation.[2] On the basis of these evaluations, McCullough terminated Ferrell on June 24, 1998. In doing so, Plaintiff alleges, he failed to follow the disciplinary procedures that the Biondi school itself had established. Based on these facts, the district court granted summary judgment for Defendant. *Ferrell v. Leake & Watts Services, Inc.*, No. 00 Civ. 8185, 2002 WL 31856816, 2002 U.S. Dist. LEXIS 24458 (S.D.N.Y.2002).

Age discrimination claims are analyzed under the burden shifting analysis set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973):

> First, a plaintiff must establish a *prima facie* case of age discrimination. Once the plaintiff has made out a *prima facie* case, the employer is required to offer a legitimate, nondiscriminatory business rationale for its actions. If the employer articulates such a reason, the plaintiff has the burden of proving that his age was the real reason for his discharge.

*Schnabel v. Abramson,* 232 F.3d 83, 87 (2d Cir.2000) (internal citations omitted). In this case, the district court determined that Ferrell had not established a *prima facie* case of age discrimination. *Ferrell,* 2002 WL 31856816 at *4–6, 2002 U.S. Dist. LEXIS 24458 at *12–18. It further held that the evidence, even it were sufficient to make out a *prima facie* case, provided "too thin a reed to establish a basis for a discrimination claim." *Ferrell,* 2002 WL 31856816 at *7, 2002 U.S. Dist. LEXIS

24458 at *21–22. The court therefore concluded that Ferrell could not, as a matter of law, show that "the legitimate reasons [for Ferrell's termination] offered by the defendant were not its true reasons, but were a pretext for discrimination." *Ferrell,* 2002 WL 31856816 at *6, 2002 U.S. Dist. LEXIS 24458 at *19 (quoting *Roge v. NYP Holdings, Inc.,* 257 F.3d 164, 168 (2d Cir.2001)). Reviewing the evidence in the light most favorable to Plaintiff, we reverse.

In order to establish a *prima facie* case under *McDonnell Douglas,* a plaintiff must "demonstrate that: 1) he was within the protected age group; 2) he was qualified for the position; 3) he was subject to an adverse employment action; and 4) the adverse action occurred under circumstances giving rise to an inference of discrimination." *Terry v. Ashcroft,* 336 F.3d 128, 137–38 (2d Cir.2003) (internal quotation marks omitted). Leake & Watts does not—nor could it—dispute that Ferrell can easily demonstrate the first three elements. *Ferrell,* 2002 WL 31856816 at *4, 2002 U.S. Dist. LEXIS 24458 at *12. However, Defendant argues, and the district court agreed, that the circumstances under which Ferrell was fired do not give rise to an inference of discrimination. *See id.* In arriving at this conclusion, the district court noted several reasons it deemed Plaintiff unable to establish an inference of discrimination: Ferrell was replaced by two teachers over forty, who were also within the protected class;[2] Plaintiff did

---

**2.** It is worth noting, in light of Defendant's assertion that spelling errors rendered Ferrell's essay inadequate, that these reports were replete with grammatical mistakes. The reports also gave Ferrell a rating of "one"–the lowest mark–in all categories. Defendant's claim that a teacher who had excelled for thirty years could be so uniformly poor strains credulity.

**2.** This circumstance does not, on its own, controvert Plaintiff's claim of discrimination. As we observed in *Terry,* quoting the Supreme Court's decision in *O'Connor v. Consolidated Coin Caterers Corp.,* 517 U.S. 308, 312, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996), the fact "[t]hat one person in the protected class has lost out to another person in the protected class is ... irrelevant, so long as he has lost

not show how Leake & Watts' alleged departure from established procedures affected the decision to dismiss her; the new principal was entitled to make his own decision about Ferrell's merits as a teacher, despite her thirty years of exemplary service; and Ferrell had not demonstrated that the vice-principal who purportedly made ageist comments about her "had the final say with respect to Ferrell's employment." *Ferrell,* at \*4–6, 2002 U.S. Dist. LEXIS 24458 at \*12–18.

In arriving at this final conclusion, the district court cited a passage from *Ekwegbalu v. Cent. Parking Sys.,* 2000 WL 1371335, 2000 U.S. Dist. LEXIS 13545 (S.D.N.Y.2000). *Ferrell,* 2002 WL 31856816 at \*6. In the Third Circuit case that *Ekwegbalu* quoted, *Ezold v. Wolf, Block, Schorr and Solis–Cohen,* 983 F.2d 509 (3d Cir.1992), the court had stated that "[s]tray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision." *Id.* at 545. The facts in *Ezold,* however, differed radically from those alleged here. The plaintiff in *Ezold,* a former employee at a law firm, had pointed to remarks one partner made, before she was hired, as evidence that her sex affected the firm's decision not to extend a partnership offer to her five years later. *Ezold,* 983 F.2d at 545. The partner to whose comments the plaintiff alluded was no longer at the firm. *Id.*

In this case, by contrast, Plaintiff claims that vice-principal Wolkenberg asserted that she was "too old to be in the classroom" during the very probationary period leading up to her termination. Moreover, Wolkenberg was not ancillary to the decision-making process; she herself composed several of the performance reviews

that led to Ferrell's firing. As we stated in *Bickerstaff v. Vassar College,* 196 F.3d 435 (2d Cir.1999), "[T]he impermissible bias of a single individual at any stage of the promoting process may taint the ultimate employment decision. . . ." *Id.* at 450. Furthermore, "[t]his is true even absent evidence of illegitimate bias on the part of the ultimate decision maker, so long as the individual shown to have the impermissible bias played a meaningful role in the promotion process." *Id.* It is clear from the record that Wolkenberg did play just such a meaningful role in the promotion process, and that her evaluations of Ferrell's classroom performance during the probationary period contributed substantially to the ultimate adverse employment decision. Although the other circumstances surrounding Plaintiff's termination may not independently give rise to the conclusion that she was fired on account of her age, they do, taken together with Wolkenberg's remark, support an inference of discrimination. Plaintiff has thus established a *prima facie* case.

■ Leake & Watts was, however, able to fulfill its burden of production on the second step of *McDonnell Douglas* by alleging that the inadequacies Ferrell displayed in her interview with McCullough and in her essay, combined with the negative performance evaluations she received during her probationary period, warranted her dismissal. *Ferrell,* 2002 WL 31856816 at \*6, 2002 U.S. Dist. LEXIS 24458 at \*18–19.

■ At this point, the presumption of discrimination raised by the *prima facie* case drops out, and "the defendant will be entitled to summary judgment . . . unless the plaintiff can point to evidence that reasonably supports a finding of prohibited

out *because of his age." Terry,* 336 F.3d at 140 (emphasis in the original).

discrimination." *Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 767 (2d Cir. 2002) (internal quotation marks omitted). Several of Ferrell's allegations in this case raise a question of fact as to whether the reasons Leake & Watts adduced for firing her were pretextual. First, Ferrell has provided evidence of thirty years of satisfactory performance, with only one negative review prior to the twenty-five-day probationary period on which her termination was allegedly based. Although "sudden and unexpected downturns in performance reports cannot, by themselves, provide the basis for a discrimination action," they may "work with other submitted proofs (such as biased remarks) to support a jury verdict of discrimination." *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 56–57 (2d Cir.1998). Second, Plaintiff was the oldest of the three teachers simultaneously placed on probation and was the only one to be fired. Third, Ferrell alleges that the vice-principal at Biondi stated publicly, near the time that her employment was terminated, that Ferrell was "too old to be in the classroom." Finally, Ferrell argues that Biondi's failure to follow the steps articulated in its "Disciplinary Procedure," and failure to afford her a grievance hearing as provided by the "Employee Grievance Procedure," demonstrates that the school discriminated against her. Although the district court determined that the alleged departures from established procedures did not affect the decision to fire Plaintiff, *Ferrell*, 2002 WL 31856816 at *5, 2002 U.S. Dist. LEXIS 24458 at *15, whether these departures had an impact upon her dismissal is a question of fact for trial. *See Stern v. Trustees of Columbia Univ.*, 131 F.3d 305, 313 (2d Cir.1997). Based on the cumulative weight of this evidence, Plaintiff has met her burden at the summary judgment stage.

For these reasons, the judgment of the district court is **REVERSED** and the case is **REMANDED** to the district court for trial.